**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4095-23

THE ALLIANCE FOR
SUSTAINABLE COMMUNITIES,
GREGORY WESTFALL,
KENNETH MAYBERG, PATRICIA
BROWN and MARY WOEHR,

      Plaintiffs-Appellants,

v.

ROBBINSVILLE TOWNSHIP LAND
USE BOARD and JOHNSON
DEVELOPMENT ASSOCIATES, INC.,

      Defendants-Respondents.

_____

      Argued March 25, 2026 – Decided April 30, 2026

      Before Judges Mayer, Paganelli and Vanek.

      On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1543-23.

      Stuart J. Lieberman argued the cause for appellants (Lieberman Blecher & Sinkevich, PC, attorneys; Stuart J. Lieberman, of counsel and on the briefs; C. Michael Gan, on the briefs).

Michael W. Herbert argued the cause for respondent Robbinsville Township Land Use Board (Parker McCay PA, attorneys; Michael W. Herbert and Alicia T. Lipton, on the brief).

Niall J. O'Brien argued the cause for respondent Johnson Development Associates, Inc. (Archer & Griener, PC, attorneys; Robert W. Bucknam, Jr., of counsel; Niall J. O'Brien, of counsel and on the brief; Jamie A. Slimm, on the brief).

PER CURIAM

Plaintiffs The Alliance for Sustainable Communities (Alliance), Gregory Westfall, Kenneth Mayberg, Patricia Brown, and Mary Woehr appeal from a July 1, 2024 order denying leave to amend their complaint in lieu of prerogative writs against defendants Robbinsville Township (Township) Land Use Board (Board) and Johnson Development Associates, Inc. (Johnson) and from a July 12, 2024 order dismissing their complaint with prejudice. We affirm both orders.

This is the fourth appeal related to Johnson's development of two warehouse buildings on property in Robbinsville (Project).[1] In the first

---

[1] We refer to our prior decision for details related to the Project. See Alliance for Sustainable Communities v. Robbinsville Twp. Zoning Bd. (Alliance I), No. A-2509-21 (App. Div. July 25, 2024) (slip op. at 2-3), and Alliance for Sustainable Communities v. Robbinsville Twp. Zoning Bd. (Alliance II), No. A-3235-22 (App. Div. Mar. 3, 2025) (slip op. at 5).

litigation, Alliance and others filed a complaint in lieu of prerogative writs challenging the Board's approval of use variances for the Project. Alliance I, No. A-2509-21 (slip op. at 11-12). Assignment Judge Robert T. Lougy dismissed that complaint and we affirmed. Id. (slip op. at 2).

Johnson then applied for subdivision and site plan approval, requesting the Board bifurcate its subdivision and site plan applications for the Project. Johnson submitted expert reports in support of the subdivision aspect of the bifurcated application. After hearing extensive testimony, the Board granted approval to subdivide the property. See Alliance II, No. A-3235-22 (slip op. at 5). Alliance filed another complaint in lieu of prerogative writs challenging the subdivision approval. Ibid. Judge Lougy dismissed Alliance's complaint with prejudice and we affirmed. Id. (slip op. at 6-9).

In 2022, Johnson applied for a flood hazard permit for the Project. See In re Johnson Development Assoc. Inc., No. A-0285-23 (App. Div. Mar. 12, 2025) (slip op. at 3). The New Jersey Department of Environmental Protection (DEP) granted the permit, determining Johnson's stormwater management plan for the Project satisfied the regulatory requirements. Id. (slip op. at 6-9). Alliance appealed and we affirmed. Id. (slip op. at 10).

A-4095-23

We turn to the facts relevant to this appeal. During the pendency of Alliance II, the Board considered Johnson's application for site approval, additional variances, and design waivers. Between December 2022 and March 2023, the Board held seven public hearings on the site plan application.

At the first hearing, Johnson's witnesses testified in support of the request for additional variances due to a change in the building's orientation. Johnson re-oriented the loading bays for one warehouse to face away from nearby residences to mitigate the building's potential noise impacts and to improve the building's aesthetic qualities.

Johnson's engineer, Kevin Webb, testified in support of design waivers for landscaping, the sanitary sewage system, and a revised stormwater management plan. He explained the changes to the site plan reflected feedback from Township representatives, including the re-orienting of the warehouse loading dock. To implement this change, Webb explained Johnson required additional variances.

Webb also addressed traffic, stormwater management, the sanitary sewer pump station, and landscaping to provide better screening. Webb testified a design waiver for the landscape plan was required because planting trees in a right-of-way would interfere with existing overhead wires and would deviate

4

slightly from the municipal landscape screening and plantings requirements for the parking areas.

Regarding the design waiver associated with the sanitary sewer system, the Project's sewer line had to cross under Interstate 95. Webb explained that sewer pipe made from high-density polyethylene was preferable to ductile iron pipe, and the change required a design waiver. The Board's engineer agreed with Webb's testimony in support of this requested design waiver.

Regarding the need for a design waiver for the Project's revised stormwater management plan, Webb testified the plan changed from the original proposal presented with Johnson's use variance application due to new DEP stormwater management rules. He stated the DEP's new regulations created a "more drastic change" but the change was "for the good . . . [of] the environment." According to Webb, the revised stormwater management plan included creation of constructed wetlands in the northeast section of the Project, required a different shape for the pond, and added "wetlands plantings." Additionally, Webb explained an existing infiltration basin would be converted to a constructed wetland.

The Board's consulting engineer, Robert Hunter, concurred with Webb's testimony. Hunter testified that the new stormwater management plan had been

A-4095-23

reviewed multiple times that the plan was "an approvable design, certainly through the Township standards," and he "believe[d] the DEP would approve."

Johnson's traffic engineer, Dan Disario, testified regarding traffic control measures. Disario explained Johnson proposed construction of a roundabout to handle traffic at the intersection of Robbinsville-Allentown Road and Circle Drive. According to Disario's testimony, the roundabout would be constructed at Johnson's sole cost. He suggested Mercer County could ban truck travel south of Circle Drive after Johnson completed the roundabout.

Disario also testified there would be limited traffic generated by the warehouses and provided traffic estimates during morning and evening rush hours. According to Disario, "the amount of traffic that this proposed development [wa]s going to generate . . . [wa]s not significant."

The Board's traffic consultant, Heather Balgowan, addressed traffic issues. She testified the Board "hashed everything out during [the] use variance" proceedings related to traffic issues. She explained Johnson and its experts "addressed all of [her] comments [and] made revisions per [her] recommendations."

At the second hearing, Webb addressed Johnson's variance requests for parking and landscape buffers. Johnson also offered testimony from an acoustic

6

engineer who presented a noise study. The study found projected noise levels from the Project would be below the Township's noise limits. Johnson's acoustic expert further explained a proposed sound attenuation wall would mitigate noise in compliance with the State's noise limits.

Johnson also presented testimony from its planner, Lance Landgraf, in support of a variance for the building's orientation and design waivers for parking lot landscaping, footpaths, and a sewer pumping station. Landgraf testified the benefits associated with approval of the additional variances and design waivers substantially outweighed the detriments, the variances and waivers were consistent with the intent of municipality's ordinances, and the variances presented "a better planning alternative than what originally was . . . required in the ordinance."

The Board's planner, Stuart Wiser, concurred with Landgraf's testimony. He stated there was no need for further testimony on Johnson's satisfaction of the positive and negative criteria for variance relief. Wiser explained:

> [Johnson] undertook this process under a bifurcated or, in this case, . . . a trifurcated process where we had the use variance, then we had the subdivision, now we have the site plan. And as part of all of that . . . [e]ach step of the way there was an understanding that, as the engineering was undertaken, the Project would evolve [and] the design would evolve.

A-4095-23

And we also heard earlier this evening that part of the evolution of the [P]roject included Township requests that reduced the impact of the [P]roject on the neighboring properties, made the [P]roject better, as Mr. Landgraf said . . . [and] [w]ere better planning alternatives.

I think what I would ask Mr. Landgraf to opine upon is within the context of the process that I just spoke about. Is the change in the site plan of the [P]roject from . . . that which was first introduced as part of the [use] variance, is this substantially similar to the [P]roject that the Board approved way back when?

Landgraf replied, "I would say yes, it is."

The third hearing addressed changes to the Project's stormwater management plan and sewage system. Johnson's attorney stated the changes were implemented in response to concerns raised by the Board's professionals.

The Board then opened the hearing for public comment. Sixteen members of the public spoke at this hearing. The public comments focused on the impacts of development in the area, traffic, water quality in Indian Run Creek, and wildlife.

At the fourth hearing, plaintiffs' attorney proffered a list of witnesses he intended to call during the Board hearings, including a wildlife expert. Johnson's attorney challenged that witness based on the prior judicial determinations governing the Project. The Board's attorney concurred with

Johnson's attorney. The Board's attorney further explained that issues related to wildlife habitats and endangered species were beyond the Board's jurisdiction.

The fourth hearing focused on cross-examination of Johnson's expert witnesses. Landgraf emphasized the Project's design presented significant benefits for the property under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -171, comported with the Township 2020 Master Plan, and was consistent with the Board's prior grant of a use variance. He reaffirmed there would be no substantial detriment to the community under the MLUL's "negative criteria," specifically citing traffic mitigation. He also explained there would be "[s]ignificant buffering and landscaping in and around the property" along with sound mitigation. Based on the previous use variance approval, Landgraf testified the Board had already determined that "warehouse distribution uses w[ould] not impair the intent and purpose of the Robbinsville Township Zon[ing] Plan."

Plaintiffs' attorney cross-examined Webb regarding soil composition. Webb explained some potentially acidic soils were detected in a soil survey. Therefore, he assumed acidic soils were present on the property. In response to questions regarding soil mitigation measures, Webb stated soils would be

segregated but he did not know where the soils would be stored once construction began.

Plaintiffs' counsel then cross-examined Webb about the stormwater management plan and whether Johnson could satisfy the DEP's groundwater recharge thresholds. Webb agreed some of the preliminary tests were below the DEP threshold. However, Webb explained Johnson's importing of more permeable soils would comply with the DEP's feedback regarding groundwater recharge. When plaintiffs' counsel sought to address other stormwater issues, including manufactured treatment devices and groundwater mounding, the Board's attorney stated those issues were under the DEP's review and beyond the scope of the Board's proceeding.

Plaintiffs' attorney also cross-examined Johnson's acoustic and traffic experts. An attorney representing the neighboring municipality, Borough of Allentown (Allentown), also cross-examined Johnson's experts regarding stormwater management, soils, traffic, and noise.

At the fifth hearing, the Board's attorney reminded the Board members that off-site traffic impacts were not issues to be resolved by the Board. Plaintiffs then called Dr. Clay Emerson to offer testimony challenging various aspects of Johnson's site plan application. Dr. Emerson had not reviewed

10

Johnson's revised stormwater plans based on the new DEP stormwater rules. Nevertheless, he opined there were flaws in the Project's proposed groundwater recharge rates.

Plaintiffs also called Carlos Rodriguez, a professional planner, to testify in opposition to Johnson's site plan application. Rodriguez explained the Project should not have been approved, even at the use variance stage, because Johnson did not submit community impact or environmental impact statements.

Plaintiffs next called Gene Bove, a noise expert, who testified Johnson's acoustic expert should have included additional bands in his sound model. Bove suggested Johnson's acoustic expert amend his noise study to address these sound issues.

Allentown presented expert engineering testimony from its municipal engineer regarding the Project's proposed outflow into Indian Run Creek. According to Allentown's engineer, the municipality had concerns about the impact of upstream development on the creek.

At the sixth hearing, the Board's attorney requested counsel present written summations at the conclusion of the hearings. Plaintiffs' attorney then presented Lee Klein, a traffic engineer, to offer testimony in opposition to the site plan application. Klein opined that Johnson's traffic expert should have

11

considered "higher generating types of warehouse uses" in formulating his traffic opinions. Johnson's attorney objected to Klein testimony about off-site traffic concerns. The Board sustained the objection.

On rebuttal, Johnson's traffic expert mentioned an anti-truck device, a "headache bar," would limit trucks to a certain height and deter trucks from turning left to exit the property. Johnson agreed to implement this traffic measure in conjunction with input from the Township and municipal emergency services.

In response to the expert testimony proffered by plaintiffs and Allentown, the Board's consulting engineer explained the site plan application comported with the Township's ordinance regarding stormwater and that the ordinance was based on the DEP's model stormwater ordinance. The Board's traffic engineer explained the Project's traffic modeling was appropriate for the site's size and configuration. Regarding the de minimis sewer issues raised by the Board's engineer, Johnson agreed to resolve those issues as "conditions of approval."

At the sixth hearing, the Board heard comments from the public. The comments reiterated concerns related to traffic, environmental issues and wildlife, light, and noise. One member of the public stated he negotiated with Johnson for construction of a higher berm on the southern edge of the property,

but the higher berm was not reflected on Johnson's plans. Attorneys for the Board and Johnson confirmed that the higher berm was part of the site plan application and would be included as a condition of any approval.

At the conclusion of the public comment portion of the hearing, Johnson's attorney explained that modifications to the conservation easement were part of Johnson's application to the DEP. He noted the existing conservation easement protected stormwater features that were never constructed. He clarified the existing easement would have to be modified to protect the areas where the stormwater management features would be constructed.

On March 28, 2023, the Board held its seventh hearing and voted on Johnson's site plan application. Before voting, the Board's attorney summarized counsels' written closing arguments and presented his own recollection of the testimony to the Board.

The Board's attorney explained the Board's planner found "the application ha[d] satisfied his review, and in his opinion he believed the applicant had proved all the positive and negative criteria and all the requirements for variances and waivers." The Board's attorney stated the Board's traffic consultant found Johnson's site plan application met "all of her requirements for traffic at the site." The Board's attorney also reminded the Board it should "not

13

consider offsite traffic in either approval or denial" and it should instead focus on "ingress and egress [and] circulation of the site" in voting on Johnson's application.

In reviewing the Board's sewer engineer's testimony, the Board's attorney stated the engineer reviewed and approved the site as to sewer concerns. Regarding the Board's consulting engineer's testimony on stormwater matters, the Board's counsel explained the expert "found that the applicant had complied, including with regard to stormwater." Additionally, the Board's attorney reminded the Board of the trial judge's decision upholding the approval of Johnson's use variance application and the Board's use variance approval addressed many of the same concerns.

Counsel for the Board asked the Board's engineer "to confirm for the record that the engineering department and through its consult[ant] . . . reviewed the site and . . . found that the site is, from an engineering standpoint, appropriate for the [B]oard to [vote] on." The engineer responded: "Yes. They reviewed the drawings. They believe[d] it is in compliance with the [T]ownship as well as approvable through the []DEP standards also, and they looked at not only the application, but the objector's materials and believe[d] the [P]roject still complied."

After hearing the testimony summary, the Board unanimously voted to approve Johnson's site plan application. The Board adopted a June 27, 2023 memorializing resolution approving the application. The detailed written resolution noted the Board's approval of the following variances: increased front yard parking for both buildings; diminished side yard set-back for one building to allow for a sound attenuation wall within the side setback; a reduced landscape buffer for one building; and installation of a headache bar for traffic control. The resolution further stated the Board "reviewed the [e]nvironmental [i]mpact [s]tatement and [c]ommunity [i]mpact [s]tatement, provided by the applicant."

Regarding the variances, the resolution concluded:

> [Johnson] has demonstrated and the Board finds, that the proposed development is consistent with the Township's Master Plan, and will not result in substantial impairment of the intent and purpose of the zone plan and zoning ordinance. The Board also finds that, as set forth in detail within this [r]esolution, the variance approvals granted herein will also not result in substantial detriment to the public good or substantial impairment of the intent and purpose of the zone plan and zoning ordinance. [Johnson]'s [p]lanner and the Board's [p]lanner have each opined that the negative criteria for the [u]se [v]ariance remain satisfied in the context of the [s]ite [p]lan. The Board finds that [Johnson]'s proofs under N.J.S.A. 40:55D-76 for the subsequent approvals granted herein are satisfied.

15

The resolution also granted Johnson's requested design waivers.

About a month later, plaintiffs filed a complaint in lieu of prerogative writs challenging the Board's approval of Johnson's site plan application. In its complaint, plaintiffs alleged the Board's approval was arbitrary and capricious because Johnson failed to: adequately support its application for use variances and design waivers; provide an adequate stormwater management plan and noise study; and satisfy the negative criteria for the bifurcated application approval. Plaintiffs also asserted the Board improperly restricted public participation at the hearings, mandated a "yes" vote from the Board members, and relied on a professional planner with a conflict of interest.

On May 7, 2024, after a year of litigation and after the parties submitted trial briefs, plaintiffs moved for leave to amend their complaint. Plaintiffs sought to add a new defendant, Mercer Industrial Properties, LLC (Mercer Industrial),[2] and a new claim under the Freshwater Wetlands Protection Act (FWPA), N.J.S.A. 13:9B-1 to -30. According to the proposed amended pleading, Johnson or Mercer Industrial intended to fill, or already filled,

---

[2] At the time of the proposed amendment, Mercer Industrial owned the property but was not the Project's developer.

wetlands without the DEP's approval. Plaintiffs did not provide notice to the DEP prior seeking leave to file an amended complaint to add a FWPA claim.

Judge Lougy heard argument on plaintiffs' motion to amend the complaint. In a July 1, 2024 order, he denied the motion, finding defendants would suffer undue prejudice if Mercer Industrial was added as a party based on the July 9, 2024 trial date. The judge further determined the FWPA claim would be futile because plaintiffs lacked standing to pursue such a claim under the Environmental Rights Act (ERA), N.J.S.A. 2A:35A-1 to -14.

On July 9, 2024, Judge Lougy held a trial on plaintiffs' action in lieu of prerogative writs. In a July 12, 2024 comprehensive and cogent written decision, the judge dismissed the complaint with prejudice.

Judge Lougy found Johnson satisfied the positive and negative criteria for the use variance and design waivers based on substantial, credible testimony and documentary evidence presented to the Board. Additionally, the judge concluded the Board accepted Johnson's stormwater management plan and noise study based on the testimony from Johnson's and the Board's experts, finding the testimony offered by those experts more credible than plaintiffs' experts. Further, Judge Lougy determined the Board properly exercised its right to exclude irrelevant testimony at the public hearings and was appropriately

17

counseled by its attorney that the Board could not deny Johnson's site plan application based on existing off-site traffic conditions.[3]

The judge found that the Board's grant of (c)(2) variances under N.J.S.A. 40:55D-70 was not arbitrary, capricious, or unreasonable and that the variances were based on substantial credible evidence provided by Johnson's and the Board's experts. The judge also upheld the Board's decision to grant the design waivers because the Board's decision as to those waivers was not made in an "arbitrary and capricious or unreasonable manner."

Regarding the Board's granting of site plan approval, the judge explained there was "conflicting expert testimony" regarding Johnson's stormwater management plan. However, the judge stated the Board's engineer opined that "the plan complie[d] with the DEP's standards regarding stormwater management." Judge Lougy found that the Board's reliance on the engineering opinions offered by its experts and Johnson's experts was not arbitrary, capricious, or unreasonable. Thus, he "decline[d] [p]laintiffs' implicit request

_____

[3] The judge did not address plaintiffs' conflict-of-interest argument. However, plaintiffs did not brief the issue on appeal. See Morris v. T.D. Bank, 454 N.J. Super. 203, 206 n.2 (App. Div. 2018) ("An issue not briefed is deemed waived on appeal") (citing N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div. 2015)).

to substitute [his] judgment for that of the Board." Further, the judge noted the "DEP issued Johnson [] a Freshwater Wetlands Permit, which necessarily encompasse[d] some of the activities [p]laintiffs challenge[d] here."

Regarding the noise issue, Judge Lougy found the Board properly relied on reasonable expert testimony provided by Johnson's acoustic expert. The judge concluded plaintiffs' expert failed to establish that plaintiffs "utilized an incorrect methodology as a matter of law." Further, the judge found plaintiffs' traffic complaints related to "off-site traffic flows" and other issues beyond the Board's jurisdiction.

Judge Lougy then addressed plaintiffs' point specific arguments. The judge rejected plaintiffs' assertion that Johnson's site plan application failed to provide sufficient evidence to demonstrate that "the development will not cause substantial detriment to the public good or the substantial impairment of the Township's zoning ordinances." To the contrary, the judge cited evidence in the record regarding Johnson's satisfaction of the positive and negative criteria.

The judge also found the Board did not improperly limit testimony concerning endangered species during the hearings. He determined the Township's ordinance governing endangered species did not "bestow[] [the]

Township [with] jurisdiction over a matter which the DEP possesse[d] significant statutory authority and primary jurisdiction."

Additionally, the judge found plaintiffs' traffic expert was not permitted to propose construction of an eastbound interchange on Interstate 195 during hearings. The judge explained such a proposal was beyond the Board's jurisdiction.

The judge also rejected plaintiffs' argument that Board members were improperly counseled regarding their vote on the application. The judge found "[t]he Board was properly counseled that exist[ing] case law prohibited denying an application based on existing off-site traffic conditions."

Plaintiffs appeal from the orders denying their motion for leave to file an amended complaint and dismissing their complaint in lieu of prerogative writs, raising the same arguments presented to the judge. We reject plaintiffs' arguments.

We first address plaintiffs' arguments that the Board's approval of Johnson's site plan application was arbitrary, capricious, and unreasonable. We disagree.

"[C]ourts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a

correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 58-59 (1999). Such decisions should only be overturned if the Board's conclusions were "arbitrary, capricious[,] or unreasonable." Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002) (quoting Medici v. BPR Co., 107 N.J. 1, 15 (1987)). A decision by a planning board or board of adjustment "is presumptively valid." Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Zoning Bd. of Adjustment, 152 N.J. 309, 327 (1998) (quoting Sica v. Bd. of Adjustment, 127 N.J. 152, 166-67 (1992)). However:

> The factual findings set forth in a resolution cannot consist of a mere recital of testimony or conclusory statements couched in statutory language. Rather, the resolution must contain sufficient findings, based on the proofs submitted, to satisfy a reviewing court that the board has analyzed the applicant's variance request in accordance with the statute and in light of the municipality's master plan and zoning ordinances.
>
> [N.Y. SMSA v. Bd. of Adjustment, 370 N.J. Super. 319, 332-33 (App. Div. 2004) (citations omitted).]

"[A] planning board's authority in reviewing a site plan application is limited to determining whether the plan conforms with the municipality's zoning and site plan ordinances." Sartoga v. Borough of W. Paterson, 346 N.J. Super. 569, 581-82 (App. Div. 2006) (citations omitted).

A-4095-23

N.J.S.A. 40:55D-70 authorizes a local board to grant (c)(2) variances where "an application . . . would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment." "It is the applicant's burden to produce this evidence." Jacoby v. Zoning Bd. of Adjustment, 442 N.J. Super. 450, 471 (App. Div. 2015) (citing Trinity Baptist Church v. Louis Scott Holding Co., 219 N.J. Super. 490, 500 (App. Div. 1987)).

N.J.S.A. 40:55D-10(d) allows a board's presiding officer to set "reasonable limitations as to time and number of witnesses." Additionally, N.J.S.A. 40:55D-10(e) provides an "agency may exclude irrelevant, immaterial or unduly repetitious evidence."

N.J.S.A. 40:55D-76(b), allowing an applicant to bifurcate an application, provides:

> The developer may elect to submit a separate application requesting approval of the variance and a subsequent application for any required approval of a subdivision, site plan or conditional use. The separate approval of the variance shall be conditioned upon grant of all required subsequent approvals by the board of adjustment. No such subsequent approval shall be granted unless such approval can be granted without substantial detriment to the public good and without substantial impairment of the intent and purpose of the zone plan and zoning ordinance.

22

The Endangered and Nongame Species Conservation Act, N.J.S.A 23:2A-1 to -16, grants the DEP authority "to manage all forms of wildlife to ensure their continued participation in the ecosystem." N.J.S.A. 23:2A-2(a)-5(a). See ZRB, LLC v. N.J. Dep't of Env't Prot., 403 N.J. Super. 531, 553 (App. Div. 2008) (outlining the DEP's statutory authority over wildlife pursuant to The Endangered and Nongame Species Conservation Act).

The Flood Hazard Area Control Act, N.J.S.A. 58:16A-50 to -103, authorizes the DEP "to adopt land use regulations for the flood hazard area, to control stream encroachments" and "to integrate the flood control activities of the municipal, county, State and Federal Governments." See In re Ncosia, 479 N.J. Super. 360, 365 (App. Div. 2024) (second and third alteration in original) ("'The [Flood Hazard Area Control] Act '"confers broad authority" on the DEP '"to protect the safety, health, and general welfare of the public by deliniat[ing] and mark[ing] flood hazard areas and subjecting them to land use regulations."'" (quoting Musconetcong Watershed Ass'n v. N.J. Dep't of Env't Prot., 476 N.J. Super. 465, 476-77 (App. Div. 2023))) (internal quotation marks omitted); N.J.S.A. 58:16A-50(b). Pursuant to that authority, DEP has promulgated rules for obtaining construction permits in flood hazard areas and within, along, or around regulated waters. See N.J.A.C. 7:13-1 to -24.11. Under these

regulations, "[a]nyone engaged in broadly defined '[r]egulated [a]ctivities,' see N.J.A.C. 7:13-2.4, 'in a regulated area shall do so only in accordance with' permits or authorizations issued by the DEP." Musconetcong, 476 N.J. Super. at 477 (second and third alteration in original) (quoting N.J.A.C. 7:13-2.1(b)) (holding the Flood Hazard Area Control Act allowed the DEP to determine whether a flood hazard permit was required on a property).

In PRB Enterprises, Inc. v. So. Brunswick Planning Board, we held planning boards do not possess the power to deny a site plan application based on the traffic impacts on adjoining roadways or elsewhere in the municipality. 205 N.J. Super. 225, 229-30 (App. Div. 1985) (citing Dunkin' Donuts of N.J. v. Twp. of N. Brunswick Planning Bd., 193 N.J. Super. 513, 515 (App. Div. 1984)).

Based on the foregoing well-settled law, the Board's site plan approval was not arbitrary, capricious, or unreasonable. The Board heard extensive testimony and its experts reviewed voluminous reports in support of and against Johnson's requested variances. Johnson's experts testified in a clear and logical manner, demonstrating that the overall site plan design responded to issues raised by plaintiffs' experts as well as the Board's experts.

24

Moreover, the Board's experts' testimony was consistent with Johnson's experts' testimony. Additionally, the Board's experts endorsed Johnson's site plan application after considering the objectors' testimony and materials.

Plaintiffs' experts focused on technicalities in Johnson's site plan application. Those experts criticized information they believed Johnson's experts failed to consider instead of challenging Johnsons' experts' factual assertions. Based on the testimony, with input from the public and cross-examination by objectors' counsel, the Board's approval of Johnson's site plan application was factually based and supported by evidence in the record.

After considering testimony for and against site plan approval, the Board found the requested variances appropriate because they led to a better overall planning design and had no substantial negative impact on surrounding properties. Moreover, the Board was free to accept or reject the testimony of the expert witnesses, including its own professional staffs' and Johnson's experts' opinions. See El Shaer v. Planning Bd. of Twp. of Lawrence, 249 N.J. Super. 323, 329 (App. Div. 1991) (holding municipal board may choose which witnesses to believe, including expert witnesses).

We also reject plaintiffs' argument that Johnson's proposed stormwater management plan was flawed. The Board heard extensive testimony regarding

A-4095-23

the stormwater management plan. Johnson's engineering expert testified Johnson's stormwater management plan was compliant with local regulations and the DEP's new stormwater management rules. The Board's consulting engineer concurred.

Plaintiffs' experts' testimony regarding purported flaws in the stormwater management plan was undermined by the expert's acknowledged failure to review Johnson's updated plan. Moreover, plaintiffs' expert's stormwater testimony did not outweigh the substantial credible testimony and supporting evidence presented to the Board in support of the stormwater plan. Importantly, when the Board granted plan approval, Johnson's stormwater plan was under review by the DEP. Additionally, during the Board's hearings, Johnson agreed the Board could include issuance of a DEP permit as a condition of approval. Under the circumstances, the Board's site plan approval was not arbitrary, capricious, or unreasonable.

We also reject plaintiffs' argument related to Johnson's allegedly flawed noise study. Plaintiffs' noise expert did not suggest the Board reject Johnson's noise study. Rather, plaintiffs' expert stated the study should be supplemented with additional information. However, the Board was entitled to accept or reject Johnson's noise expert's testimony over plaintiffs' noise expert.

A-4095-23

Nor is there any merit to plaintiffs' argument that prior approvals for an eastbound interchange on Interstate 195 evidenced the Board's disregard of traffic concerns. The prior interchange approvals were dated 1989 and 2008, when office uses were in high demand. Significantly, one of the reasons the Board approved Johnson's 2021 use variance was attributable to a decreased demand for office space. Additionally, Johnson's traffic expert testified that traffic generated by the previously approved office use would be significantly higher than a warehouse use. We are satisfied the previous conditions of approval have no bearing on the Board's approval of Johnson's site plan application based on the more recent and relevant information and testimony presented to the Board during the site planning hearings.

Further, plaintiffs' argument the judge erred in affirming the Board's site plan approval because Johnson failed to re-establish its satisfaction of the negative criteria is not supported in the record. Both Landgraf and Wiser specifically testified Johnson's site plan application satisfied the MLUL's negative criteria. Further, the Board's memorializing resolution accepted Landgraf and Wiser's testimony regarding satisfaction of the negative criteria. As noted in the Board's memorializing resolution granting site plan approval,

the "the negative criteria for the prior grant of [u]se [v]ariance [a]ppraisal remained satisfied in the context of the [s]ite [p]lan."

Moreover, contrary to plaintiffs' argument, there was no need to allow cross-examination regarding Johnson's satisfaction of the negative criteria at site plan review.  Plaintiffs vigorously challenged whether Johnson met the negative criteria for a use variance in the prior litigation.  We affirmed the Board's approval of the use variance based on Johnson's satisfaction of the negative criteria in Alliance I.  See A-2509-21 (slip op. at 11-12).  Plaintiffs' issues related to satisfaction of the negative criteria raised during the use variance application remained unchanged from their proffered objections to Johnson's site plan application.

Plaintiffs also allege testimony and comments from members of the public and plaintiffs' experts were impermissibly restricted.  Plaintiffs assert their experts were not permitted to testify regarding certain topics and their attorney was not allowed to cross-examine Johnson's experts on a variety of topics.

However, the topic areas limited by the Board were improper attempts by plaintiffs to introduce matters beyond the Board's authority in the context of reviewing Johson's site plan application.  Under these circumstances, the Board had the absolute authority to restrict discussion of irrelevant and immaterial

A-4095-23

matters and its conduct in so limiting the testimony was not arbitrary, capricious, or unreasonable. See Musconetcong, 476 N.J. Super. at 477.

Moreover, plaintiffs fail to identify any specific public comments improperly curtailed or suppressed. Instead, plaintiffs generally claim the Board "refused to allow . . . potential[] other public commentors from presenting testimony and evidence that would have contradicted the environmental impact assessment." The Board is entitled to exclude materials that are immaterial or irrelevant, and environmental concerns were beyond scope of the Board's site plan review. See N.J.S.A. 40:55D-10. Additionally, we addressed environmental concerns regarding the Project in Alliance II and In re Johnson Development Associates. See A-3235-22 (slip. op at 6-10); A-0285-23 (slip op. at 10-11).

We also reject plaintiffs' argument that the Board's attorney improperly advised Board members regarding their voting obligation. Having reviewed the pertinent transcript, plaintiffs misrepresent the instructions conveyed by the Board's attorney to the Board prior to the vote. Although a Board member stated he felt compelled to vote "yes," he specified his concern was related to off-site traffic and, therefore, accepted the Board attorney's legal advice that the Board

29

could only focus on the ingress, egress, and internal circulation of traffic within the site.

At no time did the Board's attorney tell the Board members they could not vote against the site plan application. Rather, the Board attorney's statement appropriately reflected the applicable law precluding consideration of off-site traffic in reviewing Johnson's site plan application. See PRB Enters., 205 N.J. Super. at 229-30. Importantly, even if this one Board member voted "no," the application had enough votes to approve the site plan application.

We are satisfied the judge did not err in dismissing plaintiffs' action in lieu of prerogative writs. The Board's approval was not arbitrary, capricious, or unreasonable and was based on substantial credible evidence adduced during the six hearings before the Board.

We next consider plaintiffs' argument the judge abused his discretion in denying their motion for leave to amend the complaint. We disagree.

Judge Lougy denied plaintiffs' motion, finding "that granting leave . . . to amend would cause significant prejudice to the non-moving parties, including the proposed [d]efendant." The judge explained there was an imminent trial date and "[t]he parties ha[d] already submitted their trial briefs" when plaintiffs moved to amend their pleading. Judge Lougy stated the proposed new defendant

would have to "familiarize [itself] with this litigation and draft a trial brief within a period of two weeks" and "[t]o require a party to do so goes beyond prejudice." The judge further found plaintiffs "fail[ed] to assert any nexus between the principals of [Johnson] and the proposed [d]efendant beyond a common address; this fact alone cannot establish the proposed [d]efendant possesses any familiarity with the case at bar." The judge concluded delaying the trial to add a new party would cause Johnson to suffer prejudice "by further delaying their ability to act in accordance with the . . . Board's approval."

The judge also found plaintiffs' motion to amend the complaint to add a claim under the FWPA was futile. Judge Lougy concluded plaintiffs failed to provide the required notice to the DEP under the ERA. He determined plaintiffs did not demonstrate the necessary "immediate and irreparable damage" to justify waiver of the ERA's notice requirement. Because plaintiffs failed to provide proof of notice, the judge held plaintiffs' "ERA claim would fail as a matter of law" and "granting leave to permit the amendment would be futile."

"We 'review a trial court's decision to grant or deny a motion to amend the complaint for abuse of discretion,'" particularly if the motion seeks to add new claims or new parties late in the litigation. Hopson v. Cirz, 482 N.J. Super. 232, 263 (App. Div. 2025) (quoting Grillo v State, 469 N.J. Super. 267, 275 (App.

Div 2021)).  "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'"  Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Generally, under Rule 4:9-1 "motions for leave to amend [should] be granted liberally."  Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 501 (2006) (quoting Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 456-57 (1998)).  However, a court may deny leave to amend where there is prejudice to the non-moving party or when the amendment itself would be futile.  Ibid.  An attempted amendment is futile where "the amended claim will nonetheless fail."  Ibid.

To confer standing under the FWPA, a plaintiff must file suit for a private right of action under the ERA.  See Superior Air Products Co. v NL Ind. Inc., 216 N.J. Super. 46, 58 (1987).  "The ERA does not itself confer any substantive" cause of action.  Mayor of Rockaway v. Klockner & Klockner, 811 F. Supp. 1039, 1054 (D.N.J. 1993) (citing Superior Air, 216 N.J. Super. at 58).  "[W]e have recognized that the ERA grants a private citizen standing to enforce environmental laws . . . as an alternative to inaction or inadequate action on the

part of DEP." N.J. Dep't of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 293-94 (App. Div. 2018) (citing Twp. of Howell v. Waste Disposal, Inc., 207 N.J. Super. 80, 98-99 (App. Div. 1986)). The ERA "grants private plaintiffs standing to enforce other New Jersey environmental statutes 'as an alternative to inaction by the government which retains primary prosecutorial responsibility.'" Klockner, 811 F. Supp. at 1054. The ERA specifies that "[n]o action may be commenced pursuant to this act unless the person seeking to commence such suit shall, at least [thirty] days prior to the commencement thereof, direct a written notice of such intention" to the "Attorney General, the [DEP], the governing body of the municipality in which the alleged conduct has, or is likely to occur, and to the intended defendant." N.J.S.A. 2A:35A-11. The court "may waive" this requirement if a plaintiff "can show that immediate and irreparable damage will probably result." Ibid.

Here, plaintiffs sought to amend their complaint just before trial. As a result, the judge found defendants would be prejudiced by plaintiffs' amendment because defendants would be forced to defend against a new claim based on limited information and no discovery. Additionally, the judge explained the proposed newly added defendant would suffer even greater prejudice because it would be joining an existing lawsuit where trial briefs had already been filed.

Thus, the newly added defendant would have no time to present a defense. Under these circumstances, Judge Lougy did not abuse his discretion in denying leave to amend.

Further, Judge Lougy correctly concluded the proposed amendment was futile because plaintiffs failed to provide the notice required under the ERA. Although the statute allows a trial court to waive the notice requirement in situations presenting probable "immediate and irreparable damage," plaintiffs proffered no probable resultant irreparable damage in support of their motion to amend. We are satisfied Judge Lougy did not abuse his discretion in finding the absence of proper notice and the lack of probable immediate or irreparable damage to plaintiffs supporting waiver of the notice requirement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-4095-23